IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-01872-MEH

HAKIZIMANA ANDRE,

   Plaintiff,

v.

JBS USA, LLC,

   Defendant.

---

REBUTTAL AND EXHIBTS

(INITIAL DISCLOSURE DOCUMENTS)

**For Plaintiff, *pro se*:**
Hakizimana Andre
2475 Ave., Apt. 86
Greeley, CO 80631
(720) 641-2735
andrehakizimana104@gmail.com

**For Defendant:**
Heather Fox Vickles
James S. Korte
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
(303) 299-8194
hvickles@shermanhoward.com
jkorte@shermanhoward.com

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2018 SEP -6 PM 4:05

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## FACTUAL REBUTTAL

DEFENDANT FAILED ON HIS RESPONSE FOR FOLLOWING REASONS:

**1. Defendant did not investigate the circumstance of the plaintiff's Injury.**

Defendant denies that plaintiff was injured because of his race, However, there is no way that defendant credibly come to this conclusion, as it is never conducted a thorough investigation of this injury. Plaintiff had been focusing on his work, when suddenly he felt the pain in his leg from being stabbed (pictures of the injury.) It was immediately after the incident that he was required to give a statement to the defendant about his injury. In an extreme pain, and not being aware of what had occurred, the only information plaintiff could pass the defendant was what was told that his coworker had slipped and fell and accidentally stabbed the plaintiff.

After the plaintiff underwent surgery for his injury and returned to work on Monday, August 20, 2012, plaintiff then requested the defendant's manager, Jason Miller that a more thorough investigation be completed. At this point plaintiff believes he told Miller about the employee's previous racial slur. Plaintiff asked that the security video be reviewed, but Miller told the plaintiff that there were no videos. Although there must have been witnesses to the incident, to plaintiff's knowledge, defendant did not speak with anyone regarding what they might have seen. Even in defendant's position statement, there is no claim there any sort of investigation took place. Instead, the co-worker's statement was taken at face value.

On September 11, 2012, not satisfied with the defendant's investigation, plaintiff called the Greeley police. The report of the police investigation (lacking in its own right) makes it clear that plaintiff did absolutely nothing to investigate the incident. (Exhibit R: Greeley Police Report.) First, Barbara Walker, another defendant's Human Resources employee, tells the officer that she is unaware of whether or not there was surveillance footage of the incident, but that defendant's investigation concluded that the incident was an accident. Walker did not describe any steps taken to investigate the incident.

**The police officer then spoke with the employee that stabbed the plaintiff, Enrico Marceleno. Upon being asked whether Marceleno called the plaintiff a "fucking nigger,"** Marceleno stated that it was a "big misunderstanding," and that there is "a lot of joking around that goes on at JBS Swift." Marceleno's account of event is extremely suspicious. Marceleno who stands approximately two (2) yards to the right of plaintiff, fell, cough himself with his left hand, and somehow stabbed back of the plaintiff's left leg with his right hand. The logistics involved in this account are suspicious at best.

At the very least, plaintiff's injury would have to have been the result of unsafe working conditions. There is no reason that in a safe factory environment with workers standing approximately two (2) yards apart, that one worker falling should result in such an extreme injury of another worker. Despite such a serious injury resulting from the employee's actions either malicious or reckless, the incident was never investigated, and no one was disciplined. so, defendant failed to determine the cause of the plaintiff's injury

2. Plaintiff left the plant after being terminated on November 23, 2012.

Defendant claims that plaintiff was not terminated, and instead chose to walk off the job after receiving a written warning. However, the circumstances of the incident make it clear that plaintiff had absolutely no intention of quitting his job.

On November 23, 2012, plaintiff reported to Health Services as he had been doing for almost three (3) months. That day, Trudy Sawyer, Health services defendant's manager, did come to speak with plaintiff about working less hours. Although Plaintiff did not understand because the letter describing his current

position and time to work clearly says it is for forty (40) hours per week. Plaintiff did not speak to with Sawyer about the issue any further (Exhibit I, the work schedule.) Later that day, not immediately the meeting, as defendant claims, plaintiff took his normal fifteen (15) break. During his break defendant walked to his car, and when plaintiff was walking back to Health Services, Miller came up behind the plaintiff and follow him to the Health Services. Once there, Miller told the plaintiff that he was getting a Final Written Warning for leaving work premises without permission (Exhibit F: Personal Action Record "Walking Off the job", 11/23/2012.) But, plaintiff's car was parked in a parking lot owner by the defendant.

Plaintiff was confused for a variety of reasons. First, he had been taking similar breaks out side since he had been in the position in Health Services, and he had never been disciplined prior, secondly, he was confused as to why Miller was disciplining plaintiff, when Sawyer managed Health Services. Plaintiff explained to Miller that his doctor required that he frequently walk around throughout the day to prevent stiffening in his leg (Exhibit D: Workers' Compensation from Requesting increased physical therapy and more aggressive muscles activation.) Miller would not listen, and instead demanded that plaintiff hand over his ID badge.

Plaintiff then went to the union to see if they could be of assistance. None was able to help the plaintiff. Because workers are not allowed to be at the plant without an ID badge, plaintiff left the plant with approximately one and half hours left in the shift.

Believing the discipline may have resulted from a change in his required accommodations. Plaintiff visited his doctor the following Monday morning (Exhibit G: Doctor's Notes November 26, 2012.)

There, his doctor confirmed his accommodations were the same, and his doctor even called Human Resources for defendant to inquire about the incident that occurred the previous Friday, November 23, 2012. "Pam," employee at Health Services for defendant told plaintiff to stop by Human Resources. It was when plaintiff went to the Human Resources office before his shift that day of Monday, November 26, 2012, plaintiff learned that he had been terminated because he missed three (3) days no called no shown (Exhibit H: Three Days no Called no Shown.)

### 3. Plaintiff did not terminate his employment.

Defendant claims that after plaintiff left the plant on Friday, November 23, 2012, that he never came back. Even assuming that plaintiff "walk off the job," as claimed by defendant, he only missed only one and half hours of work. Plaintiff returned to the defendant's plant the following Monday, November23, 2012, before his shift started, and requested to speak with Miller in hopes of clearing up what he thought was a misunderstanding about his accommodations. However, Miller refused to see the plaintiff, and plaintiff was told that he had been terminated for "walking off the job and missed three days no called no shown. "Even the Exit Interview provided by union at defendant's plant, describes the end of plaintiff's employment as "involuntary." (Exhibit L; Union exit Interview.) Defendant had no intention of retaining plaintiff's employment.

### LEGAL STANDARD

- Disabilities Discrimination in violation of the Title VII of the Civil Rights Act of 1964

(ADA) as amended by the Civil Rights Act of 1991 (ADAAA).

The ADAAA prohibits discrimination against qualified individuals with disabilities, those who are regarded as having a disability, and those who have a record of having a disability. See Pub. L. 110-325, 122 Stat. 3553 (2008), codified at 42 U.S.C. § 12101 et seq., Americans with Disabilities Act (ADA), 42 U.S.C. § 12203 (a). The ADAAA defines "qualified individual" as an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. In applying with ADAAA, the Tenth circuit has determined that the burden shifting analysis as announced in Mc Donnell Douglass Corp. v. Green, 411 U.S. 792(1973), should be used. Under this analysis, 1) plaintiff disabled (plaintiff suffered from ongoing injury and pain from stabbing); 2) plaintiff is qualified for the job (plaintiff was assigned to "Health Services Observation" at the time plaintiff was terminated); and 30 that plaintiff suffered an adverse employment action based on disability (plaintiff was terminated taking a walking break required by his doctor.) See White v. York Int'l Corp., 45F. 3d 357, 360-61(10th Cir. 1995.) This plaintiff believes easily able to establish a prima facie case of discrimination under the ADAAA.

The ADAAA includes in its definition of discrimination "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability… unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C.§12112 (a) (5) (A). Defendant failed to provide the reasonable accommodations when defendant refused to allow plaintiff to stay home from work following his surgery.

As a successful plaintiff in an ADAAA action, plaintiff could recover economic damages, interest, compensatory and punitive damages.

- Race and National Origin Discrimination

Title VII of Civil Rights Act prohibits an employer from discriminating "an individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of the individual's race, national origin. 42 U.S.C. § 2000e-2(a). plaintiff has intangible prove of evidence that defendant through his managers engaged in multiple intentional discrimination. See St. Mary's Honor v. Hicks, 509 U.S. 502, 508(1993.) Plaintiff will present and prove his claims by presenting: 1) direct evidence of Cargill's discriminatory motive, or 2) indirect evidence of discrimination under the Mc Donnell Douglas test. Mc Donnell Douglas corp. v. Green, 411 U.S.792 (1973.) In this case, there is evidence that defendant managers treated plaintiff worse than other employees due to his race and national origin when management refused to investigate the circumstance of plaintiff's very serious injury. Plaintiff was also discriminated against when he was disciplined, denied accommodation, and terminated under a policy that was not enforced against other non-African employees.

- Retaliation

Defendant managers involved on multiple practices discriminatory to the plaintiff: 1) defendant denied accommodation approved by him and doctor; 2) defendant refused to investigate the serious injury cause by his employee or safety issues; 3) defendant failed to show the reason of plaintiff's employment termination, and defendant in retaliatory after plaintiff contacted the police to investigate the incident cause the serious injury to the plaintiff, defendant managers angrily engaged to reduce hours weekly work from forty (40) to 36 hours and also refused to pay plaintiff the earned wage. See the Federal

Labor standards Act ("FCSA"), 29 U.S.C.215 (a) (3), and 42 U.S.C. 200e- 2(a) (b) unlawful employment practices. Griggs v. Duke POWER CO., 401 U.S. 424 (1971.)

- Wrong Termination.

Defendant failed to provide a prove or evidence reason caused the termination of plaintiff. Defendant managers claiming that plaintiff leave the defendant premises. Also, defendant claims that plaintiff missed three (3) days no called no shown. However, the parking lot were plaintiff parked his car is a defendant premises and plaintiff did not miss these three days the defendant used to cover up his discrimination intention. See Griggs v. Duke POWER co., 401 U.S. 424 (1971), and 42 U.S.C 2000e-2§ (a) (b), unlawful employment practices. Also see The Federal Labor Standards Act ('FCSA') 29 U.S.C. § 215 (A) (3).

- Wage earned and unpaid

Plaintiff will use evidence for hours worked each week. Plaintiff started his job at 3:00 p.m. and ending his shift at 11:00 p.m. this practice action is considered as another way retaliatory to the plaintiff. See C. R.S. § 8-4 101(14), unpaid wage, also see C.R.S. § 8-8- 109 (3), Failure to pay was a willful.

- Harassment.

DAMAGES AND DEFENDANT LIABILITY

Defendant is absolutely liable for harm practiced by managers personnel, whether or not the defendant knew or should have known about the misconduct. Se 42 U.S.C 2000e (b). But, in these claims, defendant was informed and failed to resolve the discriminatory practices his managers did to the plaintiff through defendant direct supervisor, managers, Greeley Police Department, Workers compensation, Colorado Labor Department, and Equal Employment Opportunity Commission. These claims of employment discrimination are seriously in fact and tangible evidence with potential issues on violation of title VII of The Civil Rights Acts, ADA, ADAAA, other federal rules and regulations. Also, defendant intentionally through his managers engaged in discriminatory practices to the plaintiff such as discriminatory malice, and with reckless to the plaintiff. In addition, defendant failed to show any good faith efforts. Instead

defendant through his managers act with careless, wrongful intention to harm plaintiff physical, mental, emotional, and financial. So, plaintiff asks the court to order the defendant to pay for damages that plaintiff have been suffered because discriminatory practices. These damages included, but not limited to physical damages, pain, wage unpaid, front pay, emotional stress, financial damages, time loss, court fees and other costs, and punitive

Finally, plaintiff believes that all hearings and trial will be held in Denver courts.

*[signature]*

HAKIZIMANA ANDRE
2075 ASH Ave. Apt. 86
Greeley, Colorado 80631
Andrehakizimana104@gmail.com