IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-01872-MEH

ANDRE HAKIZIMANA,

    Plaintiff,

v.

JBS USA, LLC,

    Defendant.

___

## ORDER
___

**Michael E. Hegarty, United States Magistrate Judge.**

### INTRODUCTION

    This action arises out of Plaintiff's former employment with Defendant. He claims discrimination, harassment, and retaliation based on his race, color, and national origin, and that Defendant failed to accommodate the Plaintiff's disability. A central event in Plaintiff's claims is an alleged August 2012 stabbing by a co-worker on Defendant's meat-cutting floor. Plaintiff contends Defendant should be sanctioned for failing to maintain a video of the stabbing. Plaintiff has filed a Motion for Sanctions for Defendant's Spoliation of Video Evidence of Job Interactions Between Harasser and Plaintiff, Including Harasser's Knifing of Plaintiff. ECF 47.

### FACTUAL FINDINGS

    I held an evidentiary hearing concerning this motion on June 2, 2020. The testimony presented, and the documentary evidence admitted before, during, and after the hearing, establish the following material facts:

    1.    Defendant had a video surveillance and monitoring system ("video system") at its Greeley, Colorado meat processing plant, which included multiple video cameras placed in

strategic areas around the plant.

2. In August 2012, the video system had the capability of being monitored internally, in a video room.

3. In August 2012, the video system had the capability of recording all video from all cameras and storing five days of video from each camera.

4. In August 2012, Defendant had contracted with an outside company, Arrowsight Inc., that also had the capability of receiving and storing video recordings (for five days) from the plant.  Arrowsight maintained records on what cameras were working at any given time and provided regular reports regarding the same to the Defendant.

5. Because of the physical environment within the processing plant, the video system's numerous cameras frequently broke down, sometimes for months at a time.

6. Plaintiff alleges, and Defendant admits, the following:

    a. Plaintiff was cut on his leg on August 17, 2012 while working in the gutting area of the plant;

    b. On August 17, 2012, Defendant knew that potential witnesses to Plaintiff's injury included Plaintiff and a co-worker Marceleno;

    c. Prior to August 17, 2012, Plaintiff had informed Defendant that Marceleno was harassing Plaintiff;

    d. Defendant immediately investigated the Plaintiff's injury, including obtaining statements from both Plaintiff and Marceleno;

    e. Defendant knew this was an injury arising during Plaintiff's employment and opened a worker's compensation case regarding the injury.

7. The video system included two cameras that, if operational, would have potentially

(although not certainly) captured a view of the stabbing in August 2012. They are designated as cameras K40 and K41.

8. Camera K40 was not functioning at the time of the incident, August 17, 2012; it had not functioned (including not recording video) since August 15, 2012; and it did not function for some months after that. Defendant knew or could have known about the malfunction but, for reasons unrelated to this incident (for example, budgetary restraints), did not immediately repair the video system as it relates to the camera at issue until late 2012.

9. Prior to the June 2, 2020 hearing, both parties' attentions were on camera K40. At the hearing Plaintiff referred to a second camera in the same vicinity where he was stabbed. Therefore, I directed the parties to provide supplemental information concerning the existence, and August 2012 status, of this second camera.

10. In supplemental submissions, Defendant admitted the existence of camera K41, which also could have shown the stabbing incident, and provided a screenshot from that camera taken in January 2012. That camera was fully operational on August 17, 2012.

11. Sometime in early September 2012, Plaintiff suspected Marceleno intentionally stabbed him and reported it to the Greeley, Colorado police department on September 11, 2012.

12. No one inquired of Defendant regarding the existence of video footage of the alleged stabbing until more than five days after August 17, 2012, at which time, on this record, any video footage of the alleged stabbing taken from camera K41 would have been gone.

13. Defendant's employee Trudy Sawyer, who managed worker's compensation cases for Defendant in 2012, testified that she utilized video footage in her review of worker's compensation claims but did not recall ever seeing footage of Plaintiff's injury.

## ANALYSIS

Based on the evidence established at the hearing, there was never any video to "spoliate" from camera K40. Therefore, justice does not support any sanction for the lack of video footage from that camera. Further, although Plaintiff suggests a legal obligation to monitor the meat processing plant in connection with Defendant's obligations under food safety regulations, even if there was such a requirement, its purpose is unrelated to preserving evidence for an employment discrimination lawsuit and, therefore, does not support a remedy here. It is regrettable that video from K40 was not captured and preserved, but on this record, regardless of whether and when Plaintiff requested video evidence (which is disputed), or when any legal obligation to preserve evidence arose (again, contested), if the evidence never existed, no legal remedy can attach.

Camera K41 requires a different analysis. Within five days of August 17, 2012, Defendant knew that a workplace injury had occurred, thus engendering a worker's compensation claim. Defendant's employee who managed worker's compensation cases in 2012 had a practice of reviewing video footage of an injury when appropriate but did not recall reviewing video footage of Plaintiff's injury.

On this record, the only reason Defendant would have had to review and preserve video of the incident from K41 would have been in connection with the worker's compensation claim. I cannot find that, under the law, litigation was reasonably foreseeable on or before August 22, 2012, the date on which the video footage would have been overwritten. Nor did the Greeley police investigation occur within that time period. Indeed, the record before me does not contain evidence that Plaintiff suspected foul play on or before August 22, 2012. Rather, in that time period, all parties were proceeding as though an "accident" had occurred.

For these reasons, I certainly cannot grant Plaintiff's preferred sanction of default

4

judgment. Plaintiff's alternative is an instruction to the jury that the video evidence, if it had been preserved, would have been adverse to Defendant. I do not, as a practice, dictate what the jury instructions will be in a case until the time of trial. I do believe the opening of a worker's compensation case and its morphing into this lawsuit may be relevant evidence and, if so, I may permit Plaintiff to question witnesses about the video system and the reasons why images from *K41* are no longer available. These are trial-time decisions and, if the parties deem appropriate, may be the subject of motions *in limine* prior to trial.

Therefore, although the Court will enter no sanction, and Plaintiff's motion (ECF 47) is **denied,** it is without prejudice to attempting to introduce evidence about the worker's compensation claim and the video system, and to proposing any appropriate jury instructions at the time of trial.

SO ORDERED at Denver, Colorado this 18th day of June, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

5