# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 18-CV-01872-MEH

ANDRE HAKIZIMANA,

    Plaintiff,

v.

JBS USA, LLC,

    Defendant.

---

## FINAL PRETRIAL ORDER

---

### 1. DATE AND APPEARANCES

The Final Pretrial Conference in this matter is scheduled before Magistrate Judge Michael E. Hegarty on August 6, 2020 at 10:45 a.m. Appearing for the Parties are:

| | |
|---|---|
| John-Paul C. Sauer<br>Goodspeed & Merrill<br>7800 East Union Ave, Suite 600<br>Denver, CO 80237<br>*Counsel for Plaintiff* | Heather Fox Vickles<br>James Korte<br>Sherman & Howard, LLC<br>633 17th Street, Suite 3000<br>Denver, CO 80202<br>*Counsel for Defendant* |
| Kathleen E. Craigmile<br>Nixon Shefrin Hensen Ogburn, P.C.<br>5619 DTC Parkway, Suite 1200<br>Greenwood Village, CO 80111<br>*Counsel for Plaintiff* | |

### 2. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5.

### 3. CLAIMS AND DEFENSES

  *a.* Narrative Summary of Plaintiff's Claims[1]

---

[1] Plaintiff also incorporates as if fully set forth herein the factual basis for his claims set forth in his Complaint [Doc 1], MSJ Response [Doc 33] and Motion for Sanctions for Failure to Preserve Video Evidence [Doc 45]

Plaintiff is a black Rawandan refugee who moved to the U.S. nearly a decade ago and earned his citizenship. In 2012, he was hired as a Gutter at Defendant's Greely, Colorado meat packing facility. He worked alongside Enrico Marceleno on a large moving conveyor belt. Cows hung upside down on hooks to be cleaned, processed, and packed and moved along with the conveyor belt. Plaintiff and Marceleno had the same job. They would step on the conveyor belt at the beginning, cut an animal's abdomen open from tail to head and remove the animal's stomach, liver, heart, and intestines, distribute them in the proper bins, step off the conveyor belt, and then walk a side path to the beginning, step back on the belt, and start cleaning another animal. The animals would continue on hooks to another part of the meat packing facility for further processing.

The gutter area was under video surveillance, which was monitored for several reasons including food safety, employee conduct management, and for later review in connection with worker's compensation cases. These facts were confirmed by Jason Miller, HR Manager, and Trudy Sawyer, Health Services Director.

Within a few months of starting his employment, Plaintiff complained to the union, JBS Human Resources, and the facility superintendent that Enrico Marceleno was repeatedly calling him "nigger" and looked at him with an "angry face." In fact, Marceleno never used Plaintiff's name, instead referring to Plaintiff only as "nigger." JBS did not initiate an investigation, take disciplinary action against Marceleno, or separate Marceleno from Plaintiff. Instead, the facility superintendent noted at a meeting with all of the gutters that he wanted the gutters to get along.

On August 17, 2012 Plaintiff was working alongside Marceleno and had just cleaned a cow with an abscess which required that he change clothes and takes a shower. Plaintiff left the line to clean up and while he was leaving Marceleno gave Plaintiff a nasty look and called him

2

"nigger." Upon his return, Plaintiff felt a sharp pain and fell to the ground. He discovered he had been slashed on the back of his leg. Plaintiff had to go to the Health Services Department, was drug tested in connection with the on-the-job injury, and was transported to the hospital for emergency surgery, stiches, and an overnight stay. Marcelino later admitted to having slashed Plaintiff but claimed it was an accident. Marceleno's harassment of Plaintiff culminated in Marceleno intentionally slashing Plaintiff with a knife.

At the same time of Plaintiff's complaints and slashing, Defendant was litigating a class action suit, EEOC v. JBS USA, LLC, 10-CV-2103-PAB-KLM. In this suit, numerous employees highlighted harassment and abuse ongoing perpetrated by Hispanic employees against African American employees. Employees from this case may testify regarding their experience with racial hostilities and Defendants consistent failure to respond appropriately to complaints of harassment. Defendant was aware of these issues in 2012 during Plaintiff's employment and failed to respond to Plaintiff's complaints and failed to preserve evidence which would show that Plaintiff was a victim of a race motivated attack which could have been prevented by Defendant.

Despite Defendants regular preservation of video evidence for use for food safety, workers compensation cases, and disciplinary matters, Miller's knowledge of video surveillance in the gutter work area, two requests from the Greeley Police Department for the security footage shortly after the incident, Plaintiff's small claims complaint against JBS, Plaintiff's multiple EEOC charges, and Plaintiff's request for the footage through discovery in this case, Defendant failed to preserve any video evidence of the slashing.

Plaintiff brought legal claims against Defendant for violations of Title VII of the Civil Rights Act of 1964 for subjecting him to a workplace permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive that it altered the conditions of

3

employment. Plaintiff was not called by his name by Marceleno and was, instead referred to as N—er. Plaintiff's complaints were not investigated and Defendant did little to protect Plaintiff from further harassment which culminated Plaintiff being slashed by Marceleno. The slashing was a racially motivated attack which could have been prevented had Defendant acted reasonable in the face of Plaintiff's complaints. Following the slashing, Defendant failed to preserve key evidence of the slashing which, by affidavit and testimony, existed at the time of the incident but has since been lost by Defendant. Plaintiff seeks all relief available to him at law, including but not limited to compensatory and consequential damages, damages for emotional distress, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; all economic losses on all claims allowed by law, including damages for lost wages, punitive damages on all claims allowed by law and in an amount to be determined at trial; attorneys' fees and the costs associated with this action on all claims allowed by law; and pre and post judgment interest.

b.  Defendant's Defenses:

Mr. Hakizimana worked for JBS USA, LLC ("JBS" or the "Company") from May 29, 2012 to November 26, 2012, at its Greeley, Colorado beef plant. Company policy prohibits discrimination and harassment on the basis of race, color, and national origin, and JBS provides training to all employees on such policies during orientation and on an annual basis. The Greeley plant has a human resources department that is responsible for implementing and enforcing the Company's policies against discrimination and harassment. The human resources department investigates employee complaints of discrimination and harassment and takes remedial action as appropriate based on its findings. JBS also maintains a 24/7 telephone hotline that employees may use to report discrimination or harassment. Posters with this hotline telephone number are

located throughout the facility.

Production workers at the plant are represented by a union, UFCW Local 7. The Union contract prohibits discrimination and harassment in the workplace and employees may file a grievance if they believe they are being harassed in violation of the Union contract and Company policy. The Union participates in new-hire orientation and provides this information to all production employees. Hakizimana was familiar with the Company's and the Union's policies and procedures.

Hakizimana alleges that at some point during the brief time (approximately ten weeks) he worked as a gutter, issues arose with one coworker on his line, Enrico Marceleno. Marceleno was an hourly production worker, like Hakizimana, and had no supervisory responsibilities. While Hakizimana claims that he complained to various individuals about Marceleno "acting angry toward him" or looking at him "with an angry face," it is unclear to whom he may have complained, when, and what he may have complained about. Hakizimana has made numerous conflicting and inconsistent sworn statements about these details, casting doubt on his credibility and the validity of his allegations.

First, Hakizimana claims that he went to his Union representatives to complain about Marceleno, but he never filed a grievance and there is no documentation or corroboration that he ever sought assistance from the Union. Next, Hakizimana claims that he went to Human Resources Manager Jason Miller to discuss his issues with Marceleno, though there is no documentation or corroboration that he in fact did so, and Mr. Miller has no recollection of such a conversation with Hakizimana. Finally, Hakizimana claims he spoke to his superintendent about Marceleno. Hakizimana acknowledges that in response, his superintendent promptly held a line meeting to discuss the concerns and remind all of workers of the Company's policies.

Hakizimana admits that he never reported any further issues with Marceleno after this line meeting and before he was injured on August 17, 2012. Other than the alleged complaints by Hakizimana, JBS received no complaints concerning Marceleno's conduct.

If Hakizimana had reported to Miller that Marceleno called him "nigger" and "fucking nigger," Miller would have promptly conducted an investigation including interviews of Hakizimana, Marceleno, and any potential witnesses. If the allegation was substantiated, disciplinary action would have been taken against Marceleno. Even if the allegation was not substantiated, all employees involved would have been reminded that such conduct is prohibited and a violation of company policy that could lead to disciplinary action up to and including termination. This is the Company's standard process, and Mr. Miller's standard process, for addressing such complaints. The fact that this standard process was not completed in response to any report made by Hakizimana supports the conclusion that Hakizimana did not report racial harassment by Marceleno.

On August 17, 2012, Hakizimana suffered an on-the-job injury when he was cut by Marceleno's knife. The Company submitted a workers' compensation claim on Hakizimana's behalf, and he received compensation for his injury through the workers' compensation system. The Company investigated Hakizimana's injury, including obtaining statements from Hakizimana, Marceleno, and a coworker who had been nearby. Around the time of his injury, Hakizimana stated that it was an accident. The Company concluded that the incident was an accident caused when Marceleno slipped and fell. The Company conducted a post-accident line meeting with the gutters to help prevent a similar accident in the future. The Greeley Police Department later conducted an investigation of the incident and also concluded that it was an accident.

Following his injury, Hakizimana was assigned a restricted duty position and never saw or worked with Marceleno again. Both Hakizimana and Marceleno were subsequently terminated for reasons that are not at issue in this trial. Because the Court has already found that Hakizimana's termination was not unlawful, he cannot recover back pay or front pay in this trial, and even if he could, he has failed to reasonably mitigate any such economic damages.

There is insufficient evidence to show that JBS had notice of any alleged race or national origin harassment of Hakizimana by Marceleno, or that JBS failed to take appropriate action to remedy any of Marceleno's conduct of which it did have notice. According to Hakizimana's own contemporaneous descriptions, the conduct he complained of was not based on his race, color or national origin and was not sufficiently severe or pervasive to alter the terms or conditions of his employment. Hakizimana experienced no problems in the workplace with anyone other than Marceleno, and cannot demonstrate that his workplace was "permeated with discriminatory intimidation, ridicule, and insult." JBS exercised reasonable care to prevent and correct promptly any harassing behavior, and Hakizimana unreasonably failed to take advantage of the preventive or corrective opportunities provided or to avoid harm otherwise. Hakizimana suffered no economic damages as a result of the alleged harassment. Hakizimana failed to reasonably mitigate his emotional distress damages, if any, and any such damages were proximately and actually caused by the acts of a third party and events outside of JBS's control. Even if Marceleno's conduct toward Hakizimana was intentional, JBS could not have foreseen it. Hakizimana's damages, if any, are limited by statutory damage caps. Punitive damages are not available because JBS did not engage in any discriminatory practice with malice or reckless indifference to Hakizimana's rights and has not engaged in any unlawful intentional discrimination. Punitive damages are not available because JBS never authorized, ratified, or

participated in any discriminatory or harassing conduct toward Hakizimana, and any alleged discriminatory or harassing acts by JBS's agents were outside the scope of the agent's authority and contrary to JBS's good faith efforts to comply with the law. Any alleged discriminatory or harassing acts were not engaged in by a management employee at a sufficiently high level to support an award of punitive damages.

## 4. STIPULATIONS

1. The Court has subject matter jurisdiction over Plaintiff's claims against the Defendant.

2. Venue is proper in this Court.

3. Plaintiff is Black.

4. Plaintiff worked for JBS from May 29, 2012 to November 26, 2012.

On August 17, 2012, Plaintiff suffered an on-the-job injury when he was cut on the back of the leg by his co-worker Enrico Marceleno.

## 5. PENDING MOTIONS

None.

## 6. WITNESSES

a. (1) Plaintiff's Witnesses: *See* attached Witness and Exhibit List

(2) Defendant's Witnesses:

(1) Defendant will call the following nonexpert witnesses (see Fed. R. Civ. P. 26(a)(3)(A)):

- Jason Miller, 1770 Promontory Circle, Greeley, CO 80634. Mr. Miller will testify regarding JBS's hiring and HR policies and procedures, his job duties and responsibilities as an HR Manager, his routine process and practice for investigating and addressing employee complaints of discrimination and harassment, his recollection of his interactions with Hakizimana, and other matters relevant to the claims or defenses

8

presented at trial.

(2) Defendant may call the following nonexpert witnesses if the need arises (see Fed. R. Civ. P. 26(a)(3)(A)):

- Officer Jerry L. Burroughs, Greeley Police Department, 2875 W. 10th Street, Greeley, CO 80634. Officer Burroughs may testify regarding his investigation of the August 17, 2012, incident resulting in Hakizimana's injury, including statements made by Hakizimana about Marceleno's conduct and the incident.

- Jose Flores, 19933 MCR 12, Weldona CO 80653, 970-542-0262 (last known address and phone). Mr. Flores may testify regarding his knowledge of the August 17, 2012, incident resulting in Hakizimana's injury and JBS's investigation of the incident, his work experiences on the gut table, and his observations of interactions between Hakizimana and Marceleno.

- Jorge Hernandez, 800 N. 8th Avenue, Greeley, CO 80631. Mr. Hernandez may testify regarding his role and duties as a UFCW, Local 7 Union Representative, the anti-discrimination and harassment provisions in the CBA, training provided by the Union at orientation, the grievance process, and his interactions, or lack thereof, with Hakizimana concerning any alleged harassment of Hakizimana by Marceleno.

- Jama Ismail, 800 N. 8th Avenue, Greeley, CO 80631. Mr. Ismail may testify regarding his role and duties as a UFCW, Local 7 Union Representative, the anti-discrimination and harassment provisions in the CBA, training provided by the Union at orientation, the grievance process, and his interactions, or lack thereof, with Hakizimana concerning any alleged harassment of Hakizimana by Marceleno.

- Anthony Jorgensen, 800 N. 8th Avenue, Greeley, CO, 80631. Mr. Jorgensen may testify

regarding his knowledge of the August 17, 2012 incident resulting in Hakizimana's injury, JBS's investigation of the incident, conclusions based on the investigation, and corrective actions taken, and his lack of knowledge of any alleged race or national origin harassment directed toward Hakizimana.

- Rudy Maldonado, 800 No. 8th Avenue, Greeley, CO, 80631.  If necessary for rebuttal or impeachment, Mr. Maldonado may testify regarding the Greeley Beef Plant's remote video auditing system, the system operations, and policies and procedures for storage and preservation of video recordings.

- Ryan Maldonado, PA-C, 1801 16th Street, Greeley, CO 80631. Mr. Maldonado may testify regarding statements that Hakizimana made in the emergency room at Banner Health North Colorado Medical Center concerning the August 17, 2012 incident resulting in his injury, and the business records reflecting statements made by Hakizimana at that time.

- Enrico Cruz Marceleno, 3021 11th Avenue, #1, Evans, CO 80620, 626-670-8755 (last known address and phone). Mr. Marceleno may testify regarding the August 17, 2012, incident resulting in Hakizimana's injury, and interactions between him and Hakizimana.

- Joseph Marceleno, 2029 8th Street, Greeley, CO 80631, 970-515-6921. Mr. Marceleno may testify regarding the August 17, 2012 incident resulting in Hakizimana's injury, his work experiences on the gut table, and his observations of interactions between Hakizimana and his coworkers.

- Luis Marin, 1407 8th Street, Greeley, CO 80631, 720-771-6324 (last known address and phone). Mr. Marin may testify regarding his supervision of the gut table where

Hakizimana and Marceleno worked, his interactions with both men, and his observations, or lack thereof, of any harassing conduct directed toward Hakizimana.

- Ramiro Mendez, 800 No. 8th Avenue, Greeley, CO, 80631. Mr. Mendez may testify regarding his knowledge of the August 17, 2012, incident resulting in Hakizimana's injury, JBS's investigation of the incident and conclusions reached, corrective actions taken, including the Line Meeting he conducted on August 20, 2012, to address the incident, and JBS's policies and procedures for investigating on-the-job accidents and injuries.

- Anthony Mills, 2037 35th Avenue, #2, Greeley, CO 80634, 970-324-5472 (last known address and phone). Mr. Mills may testify regarding the August 17, 2012 incident resulting in Hakizimana's injury, JBS's investigation of the incident, conclusions based on the investigation, and corrective actions taken.

- Mark Moshier, 655 Discovery Drive, Suite 300, Huntsville, AL 35806, 256-520-9423. If necessary for rebuttal or impeachment, Mr. Moshier may testify regarding the Greeley Beef Plant's remote video auditing system, and services provided and records maintained by his company.

- Art Rogers, 1770 Promontory Circle, Greeley, CO 80634. If necessary for rebuttal or impeachment, Mr. Rogers may testify regarding JBS's policies and procedures regarding food safety and animal welfare, compliance with food safety and animal welfare requirements, and the lack of any duty to preserve video recordings for such purposes.

- Trudy Sawyer, 3856 Larkspur Court, Loveland, CO 80538, 970-744-0835. If necessary for rebuttal or impeachment, Ms. Sawyer may testify regarding JBS's policies and procedures, including circumstances under which employees are required to undergo a

drug test, and her responsibilities and practices as of August 2012, relating to investigation of on-the-job injuries and workers' compensation claims, including the circumstances under which she would or would not request preservation of video recordings for workers' compensation purposes.

- Greg Sunner, 38W493 Berquist Drive, Geneva, IL 60134, 731-334-8231. Mr. Sunner may testify regarding JBS's hiring and HR policies and procedures, his duties and responsibilities as HR Director, his leadership of the HR department in 2012, including routine practices for investigation of employee complaints of discrimination or harassment.

- Barb Walker, 3327 34th Avenue Court, Greeley, CO 80634, 970-396-7272. Ms. Walker may testify regarding JBS's hiring and HR policies and procedures, her job duties and responsibilities as an HR manager, her knowledge of the August 17, 2012 incident resulting in Hakizimana's injury, including JBS's investigation and the Greeley Police Department's investigation, and her lack of knowledge of any complaints made by Hakizimana concerning race or national origin harassment by Marceleno.

- Any witness necessary to authenticate documents or lay the foundation for an exhibit.

- Any witness listed by Plaintiff.

- Any witness necessary for rebuttal or impeachment.

(3)    witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

- None

## 7. EXHIBITS

a.  (1) Plaintiff's Exhibits: *See* attached Witness and Exhibit List

   (2) Defendant's Exhibits:

- 2009-2013 Contract between JBS and UFCW, Local 7 (JBS000001-000092).

- JBS Employee Handbook (JBS 000283-000299).

- 05/29/2012 Hakizimana Acknowledgement of Receipt of and Understanding of the Employee Handbook (JBS 000317).

- 03/05/2012 Marceleno Acknowledgement of Receipt of and Understanding of the Employee Handbook (JBS 000241).

- 08/17/2012 Report of Employee Incident, Andre Hakizimana (JBS 000094)

- 08/17/2012 JBS Nursing Record – INJURY (JBS 000107).

- 08/18/2012 Witness Statement of Employee Incident, Enrico Marceleno (Plaintiff 000039; JBS 000369).

- 08/18/2012 Witness Statement of Employee Incident, Jose Flores (JBS 000368).

- 08/18/2012 Banner Health Emergency Room Report (JBS 000109-000113).

- Incident Investigation Team Report and Recommended Corrective Action (JBS 000365-000370).

- 08/20/2012 JBS Line Meeting Form and handwritten notes regarding meeting (JBS 000366-000367)

- 10/23/2012 Email from Officer Burroughs to Trudy Sawyer and email from Trudy Sawyer to Officer Burroughs forwarding JBS incident report and investigation documents (JBS 000364-000370).

- Greeley Police Department Officer Report for Incident 12G59451 (Plaintiff 000041-49).

- 12/13/2012 EEOC Intake Questionnaire (EEOC 105-108).

- 01/29/2013 EEOC Charge of Discrimination (EEOC 046-047).

- 03/12/2013 EEOC Intake Questionnaire (EEOC 110-116).

- 06/10/2013 EEOC Amended Charge of Discrimination (EEOC 037-039).

- 11/04/2013 Letter written by Andre Hakizimana (JBS 000371-000376).

- Statement of Jason Miller (JBS 000099), if necessary for rebuttal.

- 11/23/2012 Personnel Action Record (JBS 000100), if necessary for rebuttal.

- 02/17/2012 Enrico Marceleno Application for Hourly Employment (JBS 000221-224), if necessary for rebuttal.

- Final Admission of Liability (JBS 000319), if necessary for rebuttal or impeachment.

- Disfigurement Award and Order (JBS 000321-22), if necessary for rebuttal or impeachment.

- 11/2012-through date of trial records of Hakizimana's earnings from all sources including portions of IRS 001-128, Cargill 006-008, W-2s, if necessary for rebuttal or impeachment.

- 1/18/2017 Cargill Personnel Action Record Hakizimana Termination for Pre-Employment Falsification (Cargill 215)

- 10/01/2018 Letter from Matthew Shechter, Counsel for UFCW Local 7, in response to Subpoena issued by JBS, if necessary for rebuttal or impeachment.

- Any exhibit listed by Plaintiff.

- Any exhibit necessary for rebuttal.

- Any exhibit necessary for impeachment.

b. Copies of listed exhibits must be provided to opposing counsel and any *pro se*

party no later than 30 days before trial.  The objections contemplated by Fed. R. Civ. P.

26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than

14 days after the exhibits are provided.

## 8.  DISCOVERY

Discovery has been completed.

## 9.  SPECIAL ISSUES

None.

## 10.  SETTLEMENT

a. Counsel for the parties met in person on

December 17, 2019 to discuss in good faith the settlement of the case.

b. The participants in the settlement conference, included counsel and party

representatives.

c. The parties were promptly informed of all offers of settlement.

d. Counsel for the parties do not intend to hold future settlement conferences.

e. It appears from the discussion by all counsel that there is little possibility of settlement.

f. Counsel for the parties considered ADR in accordance with

D.C.COLO.LCivR.16.6.

## 11.  OFFER OF JUDGMENT

Counsel and any *pro se* party acknowledge familiarity with the provision of Rule

68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have

discussed it with the clients against whom claims are made in this case.

## 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and

15

the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

### 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1. Trial is to a jury and set to commence on January 25, 2021.

2. Trial is expected to take four (4) days.

3. Trial is to take place in Courtroom A501 on the fifth floor of the Alfred A. Arraj United States Court House, 901 19th Street, Denver, Colorado.

DATED at Denver, Colorado, this 6th day of August, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

APPROVED:

<u>s/John-Paul C. Sauer</u>
John-Paul C. Sauer
Goodspeed & Merrill
7800 East Union Ave, Suite 600
Denver, CO 80237
*Counsel for Plaintiff*

<u>s/Kathleen E. Craigmile</u>
Kathleen E. Craigmile
Nixon Shefrin Hensen Ogburn, P.C.
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
*Counsel for Plaintiff*

<u>s/Heather Fox Vickles</u>
Heather Fox Vickles
James Korte
Sherman & Howard, LLC
633 17th Street, Suite 3000
Denver, CO 80202
*Counsel for Defendant*